IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Terra A. Hooks, )
)
        Plaintiff, ) Case No. 1:15-CV-135
)
vs. )
)
Rumpke Transportation Company, )
LLC, et al., )
)
        Defendants. )

O R D E R

This matter is before the Court on the motion for summary judgment filed by Defendants Rumpke Transportation Company, LLC and William Goins. Doc. No. 21. For the reasons that follow, Defendants' motion for summary judgment is well-taken and is **GRANTED.**

In January 2014, Defendant Rumpke Transportation Company, LLC ("Rumpke") fired Plaintiff Terra A. Hooks, an African-American woman, from her position as a garbage truck dispatcher for clocking into work early on four consecutive days without the prior permission of her supervisor, Defendant William Goins. Plaintiff filed state and federal discrimination and retaliation claims against Rumpke and Goins alleging that Defendants terminated her because of her race and because she had previously filed a discrimination complaint with the EEOC against them. Having reviewed the parties' briefs and the current evidentiary record, and giving Plaintiff the benefit of all reasonable inferences, the Court concludes that there are no genuine issues of material fact to be resolved by a jury and that

1

Defendants are entitled to judgment as a matter of law on Plaintiff's claims. Fed. R. Civ. P. 56(a).

1. The Court may review Plaintiff's federal and state discrimination claims together because they are subjected to the same evidentiary standards. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). Unlike the Ohio Civil Rights Act, however, Title VII does not impose liability on individual supervisors, like Defendant Goins. Wathen v. General Elec. Co., 115 F.3d 400, 404-05 (6th Cir. 1997).

2. Plaintiff abandoned her claims that Defendants discriminated her on the basis of gender when they terminated her employment, and that they discriminated against her on the basis of race when they suspended her for three days in December 2013, by not responding to Defendants' motion for summary judgment on those claims. Brown v. VHS of Mich., Inc., 545 Fed. Appx. 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

3. Plaintiff cannot establish a causal connection between the filing of her EEOC complaint in December 2013 and her termination a few weeks later in January 2014 because the record shows that Goins made the decision to initiate her termination before he became aware that Plaintiff had filed an EEOC complaint. Clark County School Dist. v. Breeden, 532 U.S. 268, 271-72 (2001); Mulhall v. Ashcroft, 287 F.3d 543, 551-53 (6th Cir. 2002); Fenton v. HiSAN, Inc., 174 F.3d 827, 832 (6th Cir. 1999).

Specifically, the record shows that Plaintiff filed an EEOC complaint over her suspension on January 3, 2014, which was a Friday. Goins was on vacation the week Plaintiff filed her complaint. Goins Dep. (Doc. No. 19) at 46. Plaintiff clocked-in early on

January 2, January 3, January 6, and January 7. Goins returned to work on January 6 and learned that Plaintiff had clocked-in early without permission from any of the foremen during his absence. Goins Dep. at 50. Goins decided to recommend Plaintiff's termination on January 7. Goins Dep. at 46, 50-51. Beverly Essex, a member of Rumpke's human resources department, informed Goins and his supervisor that Plaintiff had filed an EEOC complaint when they called Essex to discuss terminating Plaintiff for clocking-in early. Goins Dep. at 46-47. Plaintiff admitted that although she informed Essex about her EEOC complaint on January 7, she did not tell Goins about it. Hooks Dep. (Doc. No. 17), at 235-36. The date the EEOC mailed notice of Plaintiff's complaint to Rumpke, January 3, 2014, does not establish the date that Goins became aware of it. Indeed, the unrebutted evidence is that Goins was unaware of Plaintiff's EEOC complaint when he made his decision regardless of when the EEOC mailed, and Rumpke received, notice of it.

Finally, Defendants were not required to abandon their plans to terminate Plaintiff just because she filed an EEOC complaint. Cf. Breeden, 532 U.S. at 272 ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Consequently, there is no causal connection between Plaintiff's protected activity and the adverse employment action.

4. Assuming that Plaintiff can establish a prima facie case of race discrimination, no reasonable juror could conclude that Defendants' reason for terminating her is a pretext for discrimination. It is not disputed that Plaintiff clocked-in early on the four days in question and it is not disputed that she did not have permission from Goins or any other

3

foreman at Rumpke to do so. Plaintiff did have authorization from Goins to clock-in early on days when there was inclement weather, but Goins testified that he did not think that the weather was particularly severe on the days in question, and, therefore, that this exception did not apply. Goins Dep. at 139-41. Goins had a reasonable basis for reaching that conclusion. Smith v. Chrysler Corp., 155 F.3d 799, 805-08 (6th Cir. 1998) (holding that if the employer reasonably relied on the particularized facts before it in taking the adverse employment action, then "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless"). The historical weather data, in the record, shows that there was less than a half an inch of snow on January 2, and no snow accumulation on January 3, January 6 and January 7. See Hooks Dep. Ex. 25.[1] In other words, Goins' perception or belief that the weather was not that bad on the days Plaintiff clocked-in early is actually supported by the data.

5. Plaintiff's contention that she was unaware that Goins had otherwise prohibited dispatch employees from accruing overtime without his prior permission does not establish that Defendants' reason for terminating her is pretextual. First, it is not disputed that Goins

---

[1] In opposition to this point, Plaintiff cites Goins' statement to the EEOC investigator in which he allegedly agreed that there was a "snow event" on January 5, 2014 that left up to 2 inches of snow in the Cincinnati area and that this would constitute inclement weather. See Doc. No. 23, at 7-8. There are several problems with this argument. First, Goins' statement, identified as Exhibit 42 in Plaintiff's brief, is not in the record. Second, the weather data in the record shows that there was only a little over a half an inch of snow on January 5, 2014 (Doc. No. 17-15, at 3), so the EEOC investigator was wrong about the severity of the weather that day. Third, January 5, 2014, was a Sunday, and not a scheduled work day, so the amount it actually snowed that day is irrelevant to the issue of whether Plaintiff was authorized to clock-in early on the days in question. Fourth, Goins testified that he agreed with the EEOC investigator that 2 inches of snow would constitute inclement weather but he disagreed that the investigator accurately described the severity of the weather on the days Plaintiff came in early. Goins Dep. at 140-41.

actually issued the policy, in writing, in March 2012 (Doc. No. 19-2), shortly after he became the manager of Plaintiff's department. Therefore, the policy itself was not fictitious and, as already stated, it is not disputed that Goins had a reasonable basis for believing that Plaintiff violated the policy. Plaintiff argues that Goins' memorandum concerning overtime did not represent an official policy of Rumpke, but the record seems clear that Goins' supervisor at least tacitly authorized Goins to establish that rule for his department. See Sand Dep. (Doc. No. 18) at 66-67 (testifying that Goins' memorandum established the rules for the department and that "if they [the department staff] didn't follow the expectations of that office, or the rules, they would be breaking the rules of the office"); Goins Dep. at 85 ("He [Sand] didn't give me approval. I just let him know what I was going to roll out. It wasn't asking for approval. It was just to tell you this is something I'm going to roll out."). Additionally, Goins testified that Beverly Essex authorized him to issue the policy. Goins Dep. at 83.

Second, despite Plaintiff's claim that she was unaware that Goins had issued this policy or rule until she was informed that she had violated it, the record shows that Plaintiff accepted an email invitation to a meeting Goins called specifically to discuss the memorandum. Doc. No. 19-4. Plaintiff could not dispute that she attended this meeting. Hooks Dep. at 124. Therefore, the documentary evidence supports the conclusion that Plaintiff was actually aware of the new overtime policy. Additionally, Plaintiff's claim that she was unaware of the overtime policy is inconsistent with her belief that Goins had authorized her to clock-in early on inclement weather days. If Plaintiff did not actually know that a policy in was place that required her to get Goins' approval before accruing overtime, then there would have been no reason for her to have asked Goins for permission to clock-

in early on days when the weather was bad. Under the circumstances, therefore, Plaintiff's alleged unawareness of Goins' overtime policy creates only a very weak issue of fact - it is certainly not enough to permit Plaintiff to withstand summary judgment on the issue of pretext. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000).

      6. Plaintiff's claim that Goins stereotyped her as "an angry black woman" is not supported by the record. Heard v. Board of Tr. of Jackson Comm. Coll., No. 11-cv-13051, 2013 WL 142115 (E.D. Mich. Jan. 11, 2013), Plaintiff's only authority on this point, described the "angry black woman" stereotype in this way:

> The Sapphire Caricature portrays black women as rude, loud, malicious, stubborn, and overbearing. This is the Angry Black Woman (ABW) popularized in the cinema and on television. She is tart-tongued and emasculating, one hand on a hip and the other pointing and jabbing (or arms akimbo), violently and rhythmically rocking her head . . . . She is a shrill nagger with irrational states of anger and indignation and is often mean-spirited and abusive . . . She has venom for anyone who insults or disrespects her.

Id. at *12 (internal brackets omitted). In that case, the court concluded that a jury could find that the decision-makers in the plaintiff's termination viewed the plaintiff as an "angry black woman" because they gave testimony in their depositions indicating that they adhered to the stereotype. One witness described the plaintiff as being "out of control" in a meeting and that she rolled her eyes, sighed, pushed back her chair, and turned her head. Another witness thought that the plaintiff had a disrespectful attitude, based on her subjective evaluation of the plaintiff's posture, behavior, tone, and the manner in which she spoke to the witness. Id.

In this case, assuming that the "angry black woman" is a recognizable stereotype,[2] no evidence suggests that Goins or any other decision-maker at Rumpke viewed Plaintiff as an "angry black woman" or that stereotypical thinking infected their decision-making process. Plaintiff was terminated for objective reasons having nothing to do with her behavior and attitude - she clocked in early without permission in violation of the policy established by Goins. Moreover, in contrast to Heard, no witness in this case gave testimony suggesting that he thought that Plaintiff's deportment fit the stereotype. Indeed, Plaintiff conceded in her deposition that no one at Rumpke had ever made remarks implicating her race. Hooks Dep. at 270.

Plaintiff's other disciplinary infractions, on which she primarily relies to establish this theory, do not support a conclusion that Goins stereotyped her as an "angry black woman." In September 2012, Goins cited Plaintiff for being disrespectful to a foreman but still characterized her as being "an incredibly valuable member of the [department]." Doc. No. 17-7. In a January 2013 note concerning Plaintiff's handling of customer calls, Goins "expressed concern over her mannerisms with customers," but nothing in the note states what the "mannerisms" were and certainly nothing indicates that the "mannerisms" fit the stereotype. Finally, in August 2013, Goins cited Plaintiff because she allowed a customer to overhear her berating a driver for not servicing the customer's container. Doc. No. 17-11. While Plaintiff now disputes that she berated the driver, she did not protest the citation

---

[2] Cf. Lloyd v. Holder, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *9-*10 (S.D.N.Y. Dec. 17, 2013) (expressing hesitancy about accepting the "angry black woman" stereotype because it is based on otherwise race-neutral terms; therefore, the plaintiff had to present other "concrete allegations" that the speaker used the terms as "code words" to refer to her race).

at the time. Even now, however, Plaintiff admits that she was "coercing" the driver to go back to service the client and that the client overhead the discussion. Hooks Dep. at 159-65.

These criticisms of Plaintiff's professionalism cannot reasonably be construed as evidence that Goins viewed Plaintiff as an "angry black woman." The reference to Plaintiff's "mannerisms" with customers is nebulous and nothing about the other two incidents even remotely suggests that Goins viewed her conduct as comporting with the stereotype or that a Caucasian employee would not have been disciplined for engaging in the same behavior. This is particularly true given Plaintiff's admission that no one at Rumpke ever made any racially-tinged comments to her.

7. Finally, Plaintiff claims that she would not have been terminated for clocking-in early in January 2014 if she had not been unfairly suspended in December 2013 for three days. Plaintiff, in other words, would have been a rung lower in the progressive disciplinary process in January 2014 absent the December 2013 suspension. As already stated, however, Plaintiff abandoned her claim that Rumpke discriminated against her on the basis of race when it suspended her. And, while Plaintiff claims that the other dispatcher, Jason Thompson, a Caucasian male, made the same errors that got her suspended or disciplined, she admitted that she not did present her evidence of Thompson's mistakes to Goins. Hooks Dep. at 190, 222-23, 254. Consequently, no reasonable juror could conclude that Plaintiff was discriminated against on the basis of race when she was suspended in December 2013. Parries v. Makino, Inc., 148 Fed. Appx. 291, 299 (6th Cir. 2005)(finding

that plaintiff and comparator were not similarly-situated because plaintiff failed to present proof that supervisor was aware that comparator committed the same infraction).[3]

### Conclusion

In conclusion, Defendants' motion for summary judgment is well-taken and is **GRANTED.** The complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date May 31, 2016               s/Sandra S. Beckwith
                                Sandra S. Beckwith
                                Senior United States District Judge

---

[3] Moreover, Plaintiff's contention that Thompson made the same errors that she did is based on reviewing reports that she generated while she was still employed by Rumpke but that are not part of the record. Consequently, Plaintiff's claim is based on hearsay and, in all probability, would run afoul of the best evidence rule. See Fed. R. Evid. 802, 1002; United States v. Bennett, 363 F.3d 947, 953-54 (9th Cir. 2004)("The reported cases show that proponents of computer-produced evidence occasionally founder on the best evidence rule by presenting oral testimony based on the witness' review of computer printouts without actually introducing the printouts themselves into evidence.") (quoting 14 Am.Jur.2d Proof of Facts 173 § 14 (1977)).